UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
WENDELL BLAIR,

      Plaintiff,

    MEMORANDUM &
    ORDER
    14-CV-5091 (ENV)(PK)

-against-

THE NEW YORK CITY TRANSIT AUTHORITY,

      Defendant.
-----------------------------------------------------------------x
VITALIANO, D.J.

  On July 2, 2014, plaintiff Wendell Blair filed this action in Supreme Court, Kings County, against defendant New York City Transit Authority ("NYCTA"), alleging wrongful termination under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). On August 27, 2014, defendant timely removed to this Court on federal question grounds, then, on April 17, 2015, moved, pursuant to Rule 12(b)(6), to dismiss. For the reasons that follow, the motion is granted to the extent that the federal claims are dismissed, and certain of plaintiff's state-law claims are remanded to state court.

## Background

  Facts are drawn from the Amended Complaint ("Compl."), see Dkt. No. 6, and other materials referenced in it. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). All factual statements alleged in the plaintiff's pleadings are taken as true and all reasonable inferences are drawn in favor of plaintiff. Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008).

Blair began work as a bus driver for NYCTA on March 13, 2000. Compl. ¶ 10. His tenure with NYCTA, he says, proceeded uneventfully until October 15, 2012, when a 14-year-old girl boarded his bus and, according to Blair, failed to pay the required fare. Compl. ¶ 16; Opinion and Award ("Op."), Dkt. No. 11-5 at 2-3. Blair alleges he recognized her as a frequent fare hopper, and he stopped her before she got off the bus to ask why she did not pay the fare and whether she used the money to buy food. Compl. ¶¶ 17-18. The interaction between the two stopped there, Blair said. See id. ¶ 18. After a short while, though, the young woman reappeared with her mother, who demanded to know what Blair had said to her daughter, and then approached a nearby police officer, who advised her to file a report with NYCTA. Id. ¶¶ 19-20.

Receipt of the mother's complaint led NYCTA to conduct an independent investigation, which resulted in Blair's discharge for gross misconduct, restraint of a child and other violations. Op. at 3. Arbitration ensued, at which Blair appeared with counsel and had the opportunity to present witnesses and submit briefing. Id. at 2-3. At the hearing, the girl provided a version of events far different from Blair's. She testified that she regularly commuted to and from school on the public bus driven by Blair, as her home was near the last stop on his route. Id. at 3. She further stated that, on several occasions before the incident in question, Blair had asked her inappropriate questions, such as whether she was Spanish or Puerto Rican, and if she had a boyfriend. Id. He also made, she said, inappropriate comments, for example, that she had pretty eyes. Id. During the underlying incident, the girl testified, after Blair had let the other passengers off the bus, he instructed her to stay seated, closed the doors and then offered to take her out for Chinese food. Id. Only after six or seven minutes of her expressing disinterest and asking to be let off the bus did Blair finally allow her to leave. Id. Blair, for his part, flatly denied this version of events, claiming that his only past interactions with the girl were to

2

occasionally ask her why she did not pay the fare and if she spent the money she saved on food. Id. at 4. The girl's mother also offered testimony that her daughter had reported Blair's alleged inappropriate statements to her on the days they had occurred, corroborating the girl's version of events. Id.

On January 29, 2013, the arbitrator sustained Blair's discharge, finding that the girl had presented credible, consistent and corroborated testimony and, unlike Blair, had no motive to lie about the incident. Id. at 6-9. Nothing in the arbitrator's opinion addressed claims that discrimination of any kind had played a part in Blair's termination.

On September 4, 2013, Blair filed a form complaint with the Equal Employment Opportunity Commission ("EEOC"), raising, for the first time, allegations of discrimination. Equal Employment Opportunity Commission Intake Questionnaire ("EEOC Charge"), Dkt. No. 11-6 at 2. On this form complaint, plaintiff asserted discrimination by defendant based only on race and national origin, omitting any claims of discrimination on the bases of sex, age or disability that Blair now also advances. Id. at 1-2. EEOC issued a right to sue letter, in the aftermath of Blair's filing, and this action followed. See Compl. ¶ 41.

## Standard of Review

Pleading rules in federal court require a plain statement of claims, but do not compel a litigant to supply "detailed factual allegations" in support of his claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007); see also Fed. R. Civ. P. 8(a)(2). Nevertheless, the rules require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "A pleading that offers 'labels and conclusions' . . . will not do." Id. (quoting Twombly, 550 U.S. at 555); see also In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95

3

(2d Cir. 2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (alternation in original) (quoting Twombly, 550 U.S. at 557).

To survive a Rule 12(b) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation and internal quotations omitted). However, courts must be mindful that these requirements are "reduced . . . in the initial phase of a Title VII litigation" such that "[t]he facts required by Iqbal to be alleged in the complaint . . . need only give plausible support to a *minimal* inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis added).

### Discussion

*A. The Gender, Age and Disability Claims*

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). Similar prohibitions exist under the ADA, with regard to disability, see 42 U.S.C. § 12112(a), and the ADEA, with regard to age, see 29 U.S.C. § 623(a)(1). However, "[b]efore an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC . . . ." Farren v. Shaw Envtl., Inc., 510 F. App'x 44, 45 (2d Cir. 2013) (citation omitted); see also Butts v. City of N. Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993) ("A district court only has jurisdiction to hear Title VII

4

claims that . . . are included in an EEOC charge . . . ."). This "administrative exhaustion" requirement holds true for claims of age- and disability-based discrimination as well. See Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 23 (2d Cir. 1985) ("No action based on a claim of age discrimination may be brought in federal court unless the claim was properly raised with the EEOC . . . ."); Agosta v. Suffolk Cty., 981 F. Supp. 2d 167, 172 (E.D.N.Y. 2013) ("A district court only has jurisdiction to hear claims brought pursuant to the ADA that are . . . contained in the EEOC charge . . . ."). Indeed, this requirement is fundamental to the goals of Title VII's statutory framework, as it both affords the EEOC the opportunity to fulfill its intended purpose of "investigat[ing], mediat[ing], and tak[ing] remedial action," Stewart v. U.S. Immigration & Naturalization Serv., 762 F.2d 193, 198 (2d Cir. 1985), and ensures that employers are "sufficiently notified" of the charges against them, Thomas v. Resort Health Related Facility, 539 F. Supp. 630, 642 (E.D.N.Y. 1982). In short, the administrative exhaustion rule applies across the board to all of Blair's discrimination claims. The rule also poses a crippling problem for him. Blair, unquestionably, did not plead discrimination on the bases of gender, age or disability in the only EEOC charge he did file, and, absent an exception, that omission amounts to a failure to exhaust the administrative remedies with regard to those claims.

Potentially affording him sanctuary, a district court may allow a plaintiff to bring unexhausted discrimination claims if it finds that such claims are "sufficiently related" to those raised in the EEOC charge that plaintiff actually filed. Carter v. New Venture Gear, Inc., 310 F. App'x 454, 458 (2d Cir. 2009) (citing Butts, 990 F.2d at 1402). There are three circumstances in which a court may grant such dispensation: "(1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) where the claim alleges an employer's retaliation for filing an

5

EEOC charge; and (3) where a plaintiff alleges further incidents of discrimination carried out in the same manner alleged in precisely the EEOC charge." Carter, 310 F. App'x at 458 (citation and internal quotations omitted).

Since Blair does not allege retaliation or further incidents of discrimination after his termination, the only hope for dispensation lies in proving that his claims for gender, age and disability discrimination "fall within the scope of the EEOC investigation which can reasonably be expected to grow out of [his] charge of [race and national origin] discrimination." Id. Such hopes, however, are quickly dashed. As common sense would dictate on its own, it is well-settled that claims of gender- and age-based discrimination cannot "reasonably be expected to grow out of" an EEOC charge rooted in the distinctly separate elements of race and national origin. See Littlejohn, 795 F.3d at 323 (affirming dismissal of unexhausted gender-based discrimination claims as not sufficiently related to discrimination claims based on "race and color"); Carter, 310 F. App'x at 458 (affirming dismissal of unexhausted gender-based claims as "not reasonably related to [plaintiff's] race-based charge"); Owens v. Elmhurst Hosp. Ctr., 24 F. App'x 82, 83 (2d Cir. 2001) (affirming dismissal of unexhausted age discrimination claim as not sufficiently related to race and gender discrimination claims); Geneste v. AGMA, Inc., No. 12-CV-5801 WFK, 2014 WL 5475392, at *9 (E.D.N.Y. Oct. 29, 2014), appeal dismissed (Mar. 26, 2015) (dismissing unexhausted age discrimination claim as insufficiently related to national origin discrimination claim).

The guideposts on this legal highway are plentiful. There is nothing in plaintiff's complaint that could distinguish it from this clear-cut line of precedent. Rather, it is plain that Blair's race and national origin claims and his gender and age claims "are sufficiently distinct,

6

both factually and legally, such that [his] failure to raise [them] in his administrative complaint precludes . . . consideration of [them] here." Farren, 510 F. App'x at 46.

Blair's disability claim fares no better.[1] He not only failed to mention this claim in his EEOC charge, but explicitly *disavowed* it by checking "No" in response to the question "Do you have a disability?" See EEOC Charge at 1. Consistent with his disavowal, plaintiff also did not complete the entire section of the EEOC charge requesting a description of his disability, its impact on his work and his employer's response. See id. at 3. In the absence of this essential information by his own choice, plaintiff cannot contend that an "EEOC investigation" into his disability claim "[could] reasonably [have been] expected to grow out of" his EEOC charge. Carter, 310 F. App'x at 458. Accordingly, that claim, too, must be dismissed.[2] Id.

## B. *The Race and National Origin Claims*

Blair's remaining claims for discrimination on the bases of race and national origin were stated in his EEOC charge and, as such, are ripe for court review. Foundationally, to establish a

---

[1] Plaintiff claims that that he was diagnosed with Type II diabetes during his employment.

[2] In this order, the Court has "dismissed all claims over which it has original jurisdiction", and it declines to exercise supplemental jurisdiction over plaintiff's gender-, age-, and disability-based claims brought pursuant to NYSHRL and NYCHRL. 28 U.S.C. § 1367(c)(3); see also Ortiz v. United Food & Commercial Workers Union, No. 14-CV-00743 (MKB), 2016 WL 4435216, at *2 (E.D.N.Y. Aug. 19, 2016) (remanding plaintiff's NYSHRL claims to state court); Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 414 (S.D.N.Y. 2014) (declining to exercise supplemental jurisdiction over NYCHRL claims when the Court would need to "invest[] the judicial resources necessary to resolve those claims"); Hamzik v. Office for People with Developmental Disabilities, 859 F. Supp. 2d 265, 282 (N.D.N.Y. 2012). (The Court also notes that, at least at one point, plaintiff purported to bring his gender discrimination claim pursuant to "42 U.S.C. Section 1981A[.]" Compl. ¶ 76. However, "plaintiff may not properly bring a sex discrimination claim under [§] 1981." Grant v. Morgan Guar. Trust Co. of N.Y., 548 F. Supp. 1189, 1192 n.5 (S.D.N.Y. 1982); see also Allen–Brown v. D.C., 54 F. Supp. 3d 35, 38 (D.D.C. 2014) ("[T]he Court finds that section 1981 cannot be the vehicle for redress of plaintiff's gender . . . discrimination . . . claims."); O'Connell v. Teachers Coll., 63 F.R.D. 638, 640 (S.D.N.Y. 1974).)

prima facie case of Title VII discrimination, Blair must show that: (1) he is a member of a protected class, (2) he was qualified for the position he sought, (3) he suffered an adverse employment action, and, as previously noted, (4) he can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation. Littlejohn, 795 F.3d at 311. The same standard applies under NYSHRL. Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000); Helmes v. S. Colonie Cent. Sch. Dist., 564 F. Supp. 2d 137, 152 (N.D.N.Y. 2008). There is no dispute that Blair, as a black male from Guyana who was terminated after 12 years of service, satisfies the first three prongs of the test set out in Littlejohn. The only remaining question is whether his claim makes the requisite minimal showing suggesting an inference of discriminatory motivation.

Such an inference can arise from circumstances including, but not limited to, "the more favorable treatment of employees not in the protected group . . . ." Id. at 312. When a plaintiff attempts to make this showing in the context of disparate disciplinary treatment, he must show that he was subject to an adverse employment action and that "a similarly situated employee not in the relevant protected group received better treatment." Carter, 310 F. App'x at 457 (citation omitted). Specifically, a plaintiff must show that he "engaged in an act of 'comparable seriousness,' but was punished more severely than similarly situated coworkers based on an application of disciplinary rules or a code of conduct." Id. (citation omitted). Moreover, since the circumstances in each case will vary, courts must make an "independent determination" about whether the specific facts pleaded provide evidence of disparate treatment. Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000) (citation omitted).

With this objective before him, plaintiff attempts to show disparate treatment by proffering one example: the experience of a white colleague who was also embroiled in a

8

scandal involving a minor.³ In the other instance, as recounted by Blair, the employee exchanged personal information and began a relationship with a 16-year-old female passenger. Compl. ¶ 78. According to Blair, although NYCTA subjected this employee to an investigation and disciplinary proceeding, only a 30-day suspension was imposed. Id. On this lone example, he grounds his claim for race-based discriminatory treatment.

Viewed in the light most favorable to Blair, these facts cannot sustain his claim, even at the pleading stage. Simply put, Blair has not "show[n] [he] was similarly situated *in all material respects* to the individual[] with whom [he] seeks to compare [him]self." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (citation omitted) (emphasis added). Soliciting the contact information of a 16-year-old passenger and initiating a relationship with her is, certainly, an act worthy of disciplinary action; it is also, unquestionably, not as grave an infraction as confining a 14-year-old passenger in a bus, at night, by herself, and refusing, despite her repeated pleas, to release her. When compounded, moreover, with the allegations that Blair had made inappropriate and unwarranted comments to his 14-year-old victim on prior occasions, it is clear that the more severe punishment imposed on Blair, that was sustained by arbitration, was not nearly comparable to the proffered example upon which the disparate treatment claim rests to meet a minimal test of discriminatory motivation. Thus, because Blair fails to plausibly allege sufficient facts to show that defendant treated a similarly situated white employee more favorably, he failed to plausibly state a claim for race discrimination. Cf. Zuk v. Onondaga Cty., 471 F. App'x 70, 72 (2d Cir. 2012) (affirming summary judgment in favor of employer, and

---

³ Although plaintiff purports to bring claims for both race-based and national origin-based discrimination, he treats these claims as a single cause of action in his complaint and does not identify the national origin of the employee he relies upon to show disparate treatment. See Compl. ¶¶ 59-74. Effectively, therefore, only a claim for race-based discrimination is presented.

9

noting that conduct of comparator employee was not of comparable seriousness); Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 96 (2d Cir. 1999); see also Opoku v. Brega, No. 15-CV-2213 (KMK), 2016 WL 5720807, at *9 (S.D.N.Y. Sept. 30, 2016) (granting motion to dismiss, and finding that "[p]laintiff's allegations that [comparator employees] committed mistakes but were not formally written up" did not "plausibly support a minimal inference that [p]laintiff's violations/discipline report and various attitude-related write-ups were motivated at least in part by racial discrimination"); Weslowski v. Zugibe, 14 F. Supp. 3d 295, 317-21 (S.D.N.Y. 2014) ("Plaintiff's conduct—viewing sexually explicit materials—is not of 'comparable seriousness' to [comparator employees' conduct of using work computers to engage in photo swapping, joke-telling, and job searching, among other things]."); Jenkins v. St. Luke's-Roosevelt Hosp. Ctr., No. 09 CIV. 12 (RMB MHD), 2009 WL 3682458, at *8 (S.D.N.Y. Oct. 29, 2009) ("Plaintiff's claim based upon disparate disciplinary treatment fails because Plaintiff does not allege that [the comparator employee]'s conduct was 'of comparable seriousness' to the conduct for which Plaintiff was terminated.").

The void in Blair's factual allegations is manifest. Aside from this one concrete, but most incomparable example given, among other things, the absence of physical confinement, plaintiff offers only vague and general allegations – for instance, he states without elaboration that the disciplinary process at NYCTA disparately impacts minority employees, who he alleges, prevail in a lower percentage of their appeals than do their white colleagues, Compl. ¶¶ 69-70, and that defendant makes no "attempt to screen candidates" in a way that eliminates racial bias. Compl. ¶¶ 66-67. Nowhere, however, does plaintiff offer any facts to substantiate these conclusory allegations. They are his perceptions and conclusions, at best. As previously noted, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."

10

Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L. Ed. 2d 209 (1986). Indeed, with no facts to offer in support of his conclusions of racial bias, plaintiff's "conclusory allegation is insufficiently specific to plausibly plead an adverse" policy. Wright v. Monroe Cmty. Hosp., 493 F. App'x 233, 237 (2d Cir. 2012); see also Lopez v. Bay Shore Union Free Sch. Dist., 668 F. Supp. 2d 406, 414 (E.D.N.Y. 2009) ("[T]he Court finds that this Circuit continues to require that racial animus be plead with particularity.").

Plaintiff's claims for discrimination on the bases of race and national origin brought pursuant to Title VII, § 1981, NYSHRL, and NYCHRL are, therefore, dismissed with prejudice.[4]

## Conclusion

For the foregoing reasons, the motion to dismiss plaintiff's claims for discrimination on the bases of race and national origin, brought pursuant to Title VII, § 1981, NYSHRL, and NYCHRL, is granted, and these causes of action are dismissed with prejudice.

The Court also dismisses with prejudice plaintiff's Title VII, ADA, and ADEA claims sounding in gender-, age-, and disability-based discrimination.

The Court, however, declines to exercise supplemental jurisdiction over plaintiff's NYSHRL and NYCHRL claims sounding in gender-, age-, and disability-based discrimination; these remaining causes of action are remanded to Supreme Court, Kings County. See 28 U.S.C. § 1367(c)(3); cf. 28 U.S.C. § 1447(c).

---

[4] NYCHRL is, of course, more protective than Title VII, and must be construed "broadly" and "in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Albunio v. City of N.Y., 16 N.Y.3d 472, 477-78, 922 N.Y.S.2d 244, 947 N.E.2d 135 (2011); see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109-10 (2d Cir. 2013). Nevertheless, even under this liberal standard, Blair's race and national origin claims fail, as a plaintiff "still bears the burden of showing . . . discriminatory motive." Id. at 110; see also Nieblas-Love v. N.Y. City Hous. Auth., 165 F. Supp. 3d 51, 67 n.2 (S.D.N.Y. 2016).

11

Although plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444, 82 S. Ct. 917, 920, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
October 12, 2016

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge